IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| DENNIS MAURICE TEMPLE, # 274802, | ) Civil Action No. 3:05-2477-MBS-JRM |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| MARY COLEMAN, INMATE GRIEVANCE | ) |
| BRANCH DIRECTOR; | ) |
| JEANIE GARDNER, INMATE GRIEVANCE | ) |
| COORDINATOR AT CATAWBA | ) |
| PRE-RELEASE CENTER; | ) |
| GLEN STONE, ACTING WARDEN AT | ) |
| CATAWBA PRE-RELEASE CENTER; AND | ) |
| ROBERT P. STROKER, GENERAL COUNSEL | ) |
| OF SOUTH CAROLINA DEPARTMENT OF | ) |
| CORRECTIONS, | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Defendants. | ) |
| | ) |

Plaintiff, Dennis Maurice Temple, filed this action on August 29, 2005.[1] Defendants are all current or former employees of the South Carolina Department of Corrections ("SCDC"). At the time he filed his complaint, Plaintiff was in inmate at the Catawba Pre-Release Center of SCDC. He has now been released from SCDC custody. Defendants filed a motion for summary judgment on December 2, 2005. Because Plaintiff is proceeding pro se, he was advised on January 4, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or counter-affidavits could

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d), DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the court.

result in the dismissal of his complaint. Plaintiff filed a response in opposition to summary judgment on January 31, 2006.[2]

## DISCUSSION

Plaintiff appears to allege that his constitutional rights were violated as to the processing of grievances he filed at SCDC. In SCDC grievance CAPRC 0008-05 (the "DNA grievance"), Plaintiff complained that blood was taken from him at the Lower Savannah Pre-Release Center of SCDC for the purpose of creating a DNA identification record data base and alleged that SCDC deducted money from his Cooper Trust Fund to defray the costs of the DNA test. In grievance CAPRC 0009-05 (the "disciplinary action grievance"), Plaintiff alleged that he was falsely accused of smoking in the big bathroom at Catawba Pre-Release Center and complained of allegedly threatening actions taken by SCDC Sergeant Havelka and SCDC Captain Molden. Defendants contend that they are entitled to summary judgment because: (1) Plaintiff has not established a constitutional violation and was not denied due process; (2) Defendants are entitled to Eleventh Amendment immunity; (3) Defendants are entitled to qualified immunity; (4) Defendants are entitled to liability and suit for state claims, if any, asserted by Plaintiff; (5) Defendants cannot be held liable under the doctrine of respondeat superior; (6) Plaintiff does not assert an injury cognizable at law and any perceived injury is de minimis; and (7) this action is barred by the Prison Litigation Reform Act of 1995 because Plaintiff has not exhausted his administrative remedies.[3]

---

[2]Plaintiff also filed a "reply" to Defendants' answer on October 26, 2005. The undersigned has also considered this response in preparing the report and recommendation.

[3]This report and recommendation addresses Plaintiff's claims on the merits. Alternatively, it is recommended that this action be dismissed because Plaintiff has failed to exhaust his administrative remedies. "No action shall be brought with respect to prison conditions under section
(continued...)

      1.      Grievances

Plaintiff appears to allege that his due process rights have been violated because Defendants did not follow SCDC procedures in processing his grievances.[4] Specifically, he claims that Defendant Stone verbally coerced him into signing a statement that he accepted the action and considered the matter closed, Stone failed to provide him with a written explanation for the actions taken, Stone failed to inform him of his right to appeal the grievance, and Defendant Gardner was

---

[3](...continued)
1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter, 534 U.S. at 532. The Fourth Circuit, in Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674 (4th Cir. 2005), recently held that an inmate's failure to allege exhaustion does not constitute failure to state a claim and the failure to exhaust is an affirmative defense that should be pleaded or otherwise properly raised by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies." Id. at 683. Here, Plaintiff appears to concede that he did not exhaust all of his administrative remedies because he signed a statement on each of the grievances that he accepted the action and considered the matter closed. See Complaint, Copies of Grievances. Defendants have raised the issue of exhaustion and Plaintiff has not shown that he exhausted his administrative remedies.

[4]Plaintiff, in his affidavit in opposition to summary judgment, appears to concede that he is complaining about grievance procedures and not the underlying issues of the grievances. He writes:
> [I] have not filed this civil suit in federal court to allege that the defendants are responsible for with-holding or deducting monies from the plaintiffs or formal inmates E. H. Cooper Trust Fund Account, in [no] shape, form or fashion. What the plaintiff is alleging are facts. That he had a right to file a grievance in reference to the conditions of his confinement, and to rec[ei]ve due process as promolgated by GA-01.12 Inmate Grievance System...."

Plaintiff's Aff., Para. 8. To the extent that Plaintiff is attempting to litigate the underlying issues of the grievances, he has made no allegations that Defendants were the ones who took the alleged actions. Defendants cannot be held liable under a theory of respondeat superior, as discussed below.

3

rude to him when he requested copies of his grievances.[5] Defendants contend that they did not violate Plaintiff's rights because they properly processed his grievances once they received them,[6] Plaintiff signed that he accepted the actions taken, Plaintiff received copies of his grievances, and Plaintiff had no right to appeal the grievances because he accepted the resolution of them.

The "Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by the state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); see also Baker v. Rexroad, 159 Fed. Appx. 61, 62 (11th Cir. Oct. 20, 2005)(unpublished)("[w]e agree with other circuits that have held that these [grievance] proceedings are not constitutionally mandated."); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991)("federal regulations providing for an administrative remedy procedure do not in and of themselves create a liberty interest in access to that procedure"); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993)(existence of a prison grievance procedure does not confer any substantive right upon inmates); Brown v. Dodson, 863 F.Supp. 284 (W.D.Va. 1994)(inmates do not have a constitutionally protected right to a grievance procedure); Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D.Ill. 1982)(even where a state elects to

---

[5]Plaintiff claims that Defendant Stone verbally coerced him into signing a statement that he accepted the resolution of his grievances. He has not, however, alleged what actions Stone took to verbally coerce him and has just made the generalized allegation that he was coerced into signing the statement. Plaintiff has not alleged anything to show that any unconstitutional threats were made. See, e.g., Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996)(disrespectful and assaultive comments did not violate Eighth Amendment); McDowell v. Jones, 990 F.2d 433, 434 (8th Cir. 1993)(verbal threats and name calling are usually not actionable under § 1983); Northington v. Jackson, 973 F.2d 1518, 1524 (10th Cir. 1992); Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979)(sheriff's idle threat to hang a prisoner did not give rise to a § 1983 claim); Lamb v. Hutto, 467 F. Supp. 562 (E.D.Va. 1979)(verbal assaults and threats do not state a constitutional claim actionable under § 1983).

[6]The parties dispute the dates the grievances were submitted and to which SCDC officials they were submitted.

4

provide a grievance mechanism, violations of its procedures do not deprive prisoners of federal constitutional rights). Further, allegations that SCDC defendants have not followed their own policies or procedures, standing alone, do not amount to constitutional violations. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)(if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).[7]

  2. Respondeat Superior

Defendants contend that they cannot be held liable on a theory of respondeat superior. The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985).

---

[7] Plaintiff appears to argue that he has a protected liberty interest in his grievances pursuant to Sandin v. Conner, 515 U.S. 472 (1995). He, however, fails to show that he has a protected liberty interest in the grievances because the alleged violation does not impose an "atypical and significant hardship" on him (the prisoner) in relation to the ordinary incidents of prison life. Id. at 483-485.

5

Plaintiff has not alleged that Defendants were personally responsible for any of the alleged incidents complained about in his DNA testing and disciplinary action grievances.[8] Further, Plaintiff has not shown that Defendants were deliberately indifferent to, or tacitly authorized, any of these alleged actions or inactions. Thus, Plaintiff fails to show that Defendants are liable on a theory of respondeat superior or supervisory liability as to the events complained about in the DNA and disciplinary action grievances.

3.     Immunity

Defendants argue that they are entitled to Eleventh Amendment immunity. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated,

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its

---

[8]The blood for Plaintiff's DNA test was drawn while he was an inmate at the Lower Savannah Pre-Release Center and he claims that he was "forced" to sign a notice by Lower Savannah River Associate Warden Ann Shawkat that he understood what was expected and required of him concerning DNA testing and the debiting of his trust account. See Grievance CAPRC 0008-05. Plaintiff claims that he was falsely accused of smoking in the bathroom by correctional officers Havelka and Molden. See Grievance CAPRC 0009-05.

>immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities. Therefore, Defendants are entitled to Eleventh Amendment immunity from monetary damages in their official capacities.

Defendants also argue that they are entitled to qualified immunity in their individual capacities. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

>Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit has stated:

>Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent."

7


> As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that Defendants violated any of his clearly established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

4. State Law Claims

It is unclear whether Plaintiff is also attempting to assert state law claims. As Plaintiff fails to show that Defendants violated his rights under § 1983 (as discussed above), it is recommended, pursuant to 28 U.S.C. § 1367(c)(3), that any state law claims be dismissed.

## CONCLUSION

Based on review of the record, it is recommended that Defendants' motion for summary judgment (Doc 20) be granted.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

June 30, 2006
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**<u>Notice of Right to File Objections to Magistrate Judge's Report and Recommendation</u>**
**<u>&</u>**
**<u>The Serious Consequences of a Failure to Do So</u>**

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. <u>Advance Coating Technology, Inc. v. LEP Chemical, Ltd.</u>, 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See <u>Mathews v. Weber</u>, 423 U.S. 261, 270-271 (1976); and <u>Estrada v. Witkowski</u>, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the ten-day period, <u>but</u> <u>not</u> <u>thereafter</u>, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See <u>United States v. Schronce</u>, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, <u>Schronce v. United States</u>, 467 U.S. 1208 (1984); and <u>Wright v. Collins</u>, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508-509 (6th Cir. 1991). See also <u>Praylow v. Martin</u>, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In <u>Howard</u>, <u>supra</u>, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. \* \* \* This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. \* \* \* We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

*Accord* <u>Lockert v. Faulkner</u>, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review.  \* \* \*  A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

<u>See</u> <u>also</u> <u>Branch v. Martin</u>, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and <u>Goney v. Clark</u>, 749 F.2d 5, 7 n. 1 (3rd. Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").  This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.  See <u>Wright</u>, <u>supra,</u>; and <u>Small v. Secretary of HHS</u>, 892 F.2d 15, 16 (2nd Cir. 1989).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

<div align="center">
Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201
</div>